Original,
No. 5854.

IN RE UNIFICATION OF THE NEW HAMPSHIRE BAR.

Argued November 20, 1968.
Decided December 31, 1968.

LAMPRON, J. The petition states that the New Hampshire Bar Association now provides, and for many years heretofore has provided, for the assistance of this court, as the general superintending authority over the Bar of this state, services of a quasi-public nature. They include, among others, continuing legal education of the Bar; maintenance of the Bar's ethical standards; protection of the public against unauthorized practice of law by unqualified persons; provision of legal research, services and public discussion in matters of concern to the administration of justice.

It is further alleged that "the increasing urbanization of this State, the increasing complexity of the practice of law, and the increasing size of the Bar all magnify the importance of rendering these quasi-public services, but diminish the ability of your Petitioner's doing so effectively as a voluntary association, and have raised the cost of doing so to a point where financial support of the entire Bar is necessary if the programs are to reach all members of the Bar."

Allegation is also made that unification or integration of the Bar is for the purpose and has the effect, of enabling "the unified association to more effectively serve the Court, the Bar, and the public, by reinforcing programs by more widespread participation by the Bar, and by providing financial support for the necessary activities enumerated" hereinabove.

The petition also states that after an authorized study a special committee of the New Hampshire Bar Association recommended that the Association "become a unified, as opposed to a voluntary, bar association." Due notice, of a meeting to be held April 6, 1968 to act on the committee's report and recommendation, was given to all persons known or believed to be attorneys practicing in this state, whether members of the New Hampshire Bar Association or not. At this meeting, non-members of the

Association were eligible and entitled to vote on the question of unification of the Bar along with members. The committee recommendation was adopted by a vote of 72 to 34.

However, the adopting resolution provided that it was to "take effect if a majority of those balloting in a referendum of the members of the New Hampshire Bar as far as is known shall vote in favor of unification of the New Hampshire Bar." Such a referendum, taken by written ballot requiring the signature of each voter, resulted in a vote of 231 for and 188 against unification. The present petition was thereafter filed with this court which issued the following order on September 27, 1968: "Petitioner's brief to be filed by October 19, 1968. Any member of the New Hampshire Bar, whether or not a member of the Bar Association may file a written memorandum by November 9, 1968; hearing November 20, 1968 at 10 A.M."

The Association itself established a procedure to be followed in connection with the presentation of the petition for unification. It included (1) mailing copies of the petition and copies of the proposed constitution and by-laws to all members of the New Hampshire Bar and Bar Association concurrently with its filing in this court, and (2) making copies of its brief available without cost to all members of the New Hampshire Bar on request.

Many members of the Bar of this state presented briefs, written memoranda, and oral arguments for and against the granting of the petition and some were also directed at certain provisions of the proposed constitution and by-laws.

A unified Bar, also called an integrated Bar, is a Bar organization in which membership and payment of dues is required as a condition of practicing law in a state. *Lathrop* v. *Donohue,* 10 Wis. 2d 230, 237; *Id.,* 367 U. S. 820, 827, 828; 50 Mass. L. Q. 247. When such a Bar is established all persons who have been or are thereafter admitted to practice as an attorney in that state become members of the State Bar Association subject to its constitution and by-laws, including the requirement to pay dues, and entitled to all the benefits to be derived from such an organization. The "Proposed 1969 Revision Of The Constitution of The New Hampshire Bar Association" filed with the petition so provides.

In the 29 states and 2 territories now having such bars, unification was accomplished either entirely by the Legislature

(N. D. Laws 1921, ch. 25; Code of Ala. Tit. 46, ch. 3) or entirely by court order (*Petition of Florida State Bar Ass'n,* 40 So. 2d 902 (Fla. 1949); *In re State Bar of Georgia,* 219 Ga. 873 (1964)); or by a combination of legislative and judicial action (Wis. Stat. (1965) *s.* 256.31; *In re Integration of Bar,* 273 Wis. 281 (1956); *Id.,* 5 Wis. 2d 618 (1958)).

House Bill No. 458 providing for the unification of the Bar of this state was introduced in our Legislature in 1961. It received a first and second reading (1961 House Journal 592) but was indefinitely postponed in accordance with a resolution that all bills pending at the close of the session would be so disposed of. *Id.,* 1189. However, this court being of the opinion, as will hereinafter appear, that unification of the bar of this state is a matter which is within its jurisdiction and which can best be considered and resolved by it, the above negative and inconclusive action in the Legislature should not be regarded as of particular significance. See *Dean* v. *Smith,* 106 N. H. 314, 317; *Briere* v. *Briere,* 107 N. H. 432, 434.

The Legislature by specific legislation has granted to this court authority over the admission of a person to practice law as an attorney as well as the power to supervise, control and discipline those so admitted. RSA ch. 311. However, this court held in *Ricker's Petition,* 66 N. H. 207, 211, that the "authority to make reasonable rules for the admission and removal of members of the bar 'is necessarily inherent in every court, in order to enable it to discharge its duties, as much so as to preserve order.'" It was also stated in that opinion by *Doe,* C. J.: "The constitution . . . vests in the courts all the judicial power of the state. The constitutional establishment of such courts appears to carry with it the power to establish a bar to practice in them." *Id.,* 210. This would be the prerogative of this court as RSA 490:4 vests in it the general superintendence of all our courts. To the same effect are *Bryant's Case,* 24 N. H. 149, 158; *Harrington's Case,* 100 N. H. 243; *Broderick's Case,* 106 N. H. 562; *Donovan's Case,* 108 N. H. 34.

The purposes of the unified Bar sought to be decreed by this court in the present petition are contained in the proposed constitution filed therewith. They are, among others, to improve the administration of justice; to foster and maintain high standards of conduct, integrity, competence and public service

on the part of those engaged in the practice of law; to provide a forum for the discussion of subjects pertaining to the practice of law, the science of jurisprudence and law reform; to carry on a continuing program of legal research and education.

We hold that the determination of whether the administration of justice in New Hampshire will best be served by the compulsory enrollment of all the members of the Bar of this state into one unit to which the members must pay dues necessary to its efficient operation is an integral part of the inherent power of this court to regulate the practice of law and to supervise those engaged therein in New Hampshire. Lawyers being thus uniquely related to, and subject to supervision and regulation by the judiciary, we hold that this court has jurisdiction to decide the issue of the unification of the Bar of this state presented by the petition before us. *Ricker's Petition,* 66 N. H. 207.

This power of the supreme court of a state or territory to integrate its bar without any specific statutory authorization or direction to do so has been upheld, to the best of our knowledge, in every jurisdiction where the issue has been raised. *In re Integration of Bar of Hawaii,* 432 P. 2d 887 (1967); *Petition of Florida State Bar Ass'n,* 40 So. 2d 902; *In re Integration of Nebraska St. Bar Ass'n,* 133 Neb. 283; *Integration of Bar Case,* 244 Wis. 8; Annots., 114 A. L. R. 161; 151 A. L. R. 617; 21 A. B. A. J. 635. If exercised to raise the quality of professional services of lawyers and to enhance the administration of justice, a supreme court may constitutionally decree the creation of a unified Bar and require that the costs of improving the profession be shared by its members, the lawyers admitted to practice in the state. *Lathrop* v. *Donohue,* 367 U. S. 820, 843; *Id.,* 10 Wis. 2d 230.

The New Hampshire Bar Association in support of its petition for unification of the Bar of this state advances, among others, the following considerations:

(1) While membership in its voluntary Association includes substantially all of the practicing Bar (706 out of 750), a large proportion of the membership is formal and perfunctory with less than one-third attending most meetings and with an even smaller attendance at business and serious education meetings. Furthermore its records show that in November 1967, when the maximum dues were $25, 88 members had not paid them. However, in November 1968, with the maximum dues at $50, 145

members have not yet paid.

It has been the experience of at least one unified Bar (Wisconsin) that "membership interest and the desire to participate actively in bar government and committee work far surpasses those under the voluntary bar." Habermann, Advantages of the Unified Bar, 10 N. H. B. J. 36, 42. By its nature, of course, no problem of maintaining full membership is encountered. It is also argued in petitioner's brief that this all inclusive membership in a State Bar organization will produce a "profession consciousness" which will enable the Bar to better discharge its "heavy responsibility of public services involved in seeking improvements in the administration of justice on the broad scale, and earning a client's confidence and trust in the individual case."

(2) It is also argued that under voluntary association, discipline and requiring observance of ethical standards is ineffective as to its members and impossible with regard to non-members, who have caused many of the serious disciplinary problems. A unified Bar will permit the imposition of ethical standards on all the lawyers admitted to practice in this state and provide an effective means of enforcing their observance which is not the case today under the voluntary Association. This will facilitate and improve supervision by this court to protect the rights of the public against unethical activities by members of the Bar. See *Wiener* v. *Weintraub,* 239 N. E. 2d 540, 541 (N. Y. App. 1968); *Lathrop* v. *Donohue,* 367 U. S. 820, 830.

(3) A unified Bar will insure the finances, personnel, and interest in the general membership to provide more and better "Post-graduate education" for its members, which is essential but inadequate under the voluntary association. This will enhance the competency of lawyers to handle the legal matters entrusted to them by those of the general public who employ them. See *Lathrop* v. *Donohue,* 10 Wis. 2d 230, 246.

(4) In a related domain, a unified Bar will also provide the finances and personnel necessary to ferret out and effectively stop the unlawful practice of law by unauthorized individuals. Again this will provide protection to those who seek legal advice or other legal services.

(5) The difficulty presently encountered in mobilizing the members of the Bar as a whole to take a united position on

certain pertinent and vital matters will disappear or be substantially lessened. An integrated Bar will be able to publicly express the views of a majority of the lawyers of the state particularly with respect to legislation affecting the administration of justice and the practice of law. See *Lathrop* v. *Donohue,* 367 U. S. 820, 844.

The fact that a unified Bar can take a position and publicly express its views on pending legislation has been one of the main targets of those opposing the petition. The Association's brief recognizes that because of this prerogative of the unified Bar "officers and other leaders have an obligation to be more circumspect in respect to 'political' issues that are not clearly within the realm of the administration of justice." We note also that section 3 of article 5 of the proposed by-laws provides that every resolution offered by any member for consideration "shall be pertinent to the legal profession or to the purposes of the Association or in relation to its internal affairs." Furthermore we are of the opinion that a unified Bar as proposed in the petition should confine its activities in this sphere to legislation dealing with administration of justice, the operation of the courts, the practice of law, and the legal profession. See *Lathrop* v. *Donohue,* 10 Wis. 2d 230, 238.

The views expressed in those domains being those of the organization, an individual attorney is still free to voice his own views on any subject in any manner he wishes. He can do this even though such views be diametrically opposed to the position taken by the unified Bar of his state. *Id.,* 237. In addition thereto, if the activities of the unified Bar deviate substantially from the fields previously mentioned, an individual member, or a group thereof, can always seek judicial relief. *Id.,* 239.

We do not share the views of opponents to the petition who maintain that a unified Bar constitutes coercion which violates an individual member's right of association, or rather not to associate, or his alleged right to resign from any organization or that it constitutes enforced professional guildism. *Lathrop* v. *Donohue,* 367 U. S. 820. Because the legal profession by its very nature comes under the supervision of the judiciary, we do not feel that if a court, on a balance of interests, finds it in the public welfare to provide that lawyers, often called officers of

the court, must be members of a unified Bar and pay reasonable dues for its support, this would constitute a nefarious guild. Neither the proposed constitution or by-laws, filed with the petition, compels a member of the proposed unified Bar to associate with his fellow lawyers. On the contrary any lawyer in this state will be free, to attend, or not, its meetings, to belong to any other voluntary Bar Association, or to even establish a competing one. The obligation to remain a member of a unified Bar, if one is admitted to practice law in the state, and to pay dues thereto constitutes proper regulation of those engaged in the practice of law. *Lathrop* v. *Donohue,* 10 Wis. 2d 230, 242. *Id.,* 367 U. S. 820, 843. Nor is it "more undemocratic than the requirement of learning and good moral character of all who seek the privilege of practicing law." *In re Integration of the Bar,* 5 Wis. 2d 618, 622.

Courts where a unified Bar exists have expressed themselves in favor of the system. "Under integration the State Bar has increased its service to the lawyers of this state, promoted the highest standards of the members of the profession, and increased its contribution to public service and to the administration of law and justice." *In re Integration Of The Bar,* 5 Wis. 2d 618, 621. The Supreme Court of Florida has stated that "the integrated bar of California has brought about a bond of unity and cooperation on the part of the bar, the courts and the public for a more efficient administration of justice." *Petition of Florida State Bar Ass'n,* 40 So. 2d 902, 905. The same court concluded that the unified Bar "provides the best means yet devised to enlist the full man power of the bar in the execution of its duty." It "has restored public confidence in the bar, enlarged professional consciousness, energized the bar's responsibility to the public, has improved the administration of justice and is the only means presented whereby every member of the bar can share in its public and professional responsibility." *Id.,* 909.

We have considered and weighed the arguments for and against the establishment of a unified Bar in this state by decree of this court. We are of the opinion that it is in the interest of the administration of justice, of the legal profession, and in the public welfare, that a unified Bar be established and tried in New Hampshire.

Some suggestions for changes in the proposed constitution and by-laws have been made by some members of the Bar. One is an amendment to article 1 of the constitution by adding the following: "It is not among the purposes of the Association to take positions on legislation except that which is directly related to the administration of justice and the practice of law." It was further suggested that the by-laws be amended "(1) to require that a position of the Association on legislation may only be taken at a meeting of the Association, notice of which contains the substance of a resolution with respect thereto and (2) that the judgment of the board of governors as to whether or not the matter is within the scope of the purposes of the Association shall be final and binding upon the Association."

We have already stated in this opinion our views on this subject and do not require that these proposed changes be adopted as a condition to our order of unification. We refer these suggestions for consideration by the appropriate officers or members of the Association and Bar.

It has also been suggested that article 1, section 2 of the proposed by-laws should be amended in their requirements "(g) Name of law school and year of graduation" in the application for enrollment. We assume that if the member did not attend a law school or did not graduate he would be enrolled without having furnished this information.

It has also been argued that article V of the constitution pertaining to the membership and election of the board of governors is "unfortunate, discriminatory and subject to challenge on constitutional grounds." We do not find it subject to these objections. We have no reason to disagree with the representation made to this court that attention had been given to this matter by those who framed the constitution, and that they found article V to best assure proper representation of the entire membership on the board of governors.

We order the establishment of a unified Bar for a period of three years from the effective date of the proposed constitution and by-laws for such organization, when adopted by the members of the New Hampshire Bar. This court reserves continuing jurisdiction of the subject matter of this petition.

*Unified Bar decreed for a trial period of three years.*

DUNCAN and GRIMES, JJ., dissented; the others concurred.

DUNCAN, J., *dissenting:* Compulsion seems to me a doubtful expedient for the achievement of the lofty purposes prompting this petition, more especially since the compulsion relates only to finances. That it is so limited, suggests recognition of the futility of attempting to legislate self-improvement. I am not satisfied that public necessity demands the radical measure suggested, and it lacks the prestige of active support by even a majority of the Bar. The possibility of comparable achievement by voluntary effort has not been exhausted. If more stringent disciplinary procedures are called for, they could be provided without assessing dues under penalty of disbarment. In the light of existing circumstances, I would deny the petition without prejudice.

GRIMES, J., *dissenting:* Granting that the court has the power to enter the order it has, I would not go so far so soon and therefore cannot join in the opinion of the court. If the personal freedom of even one lawyer is to be curtailed on the basis that it is necessary for the public good, then that necessity should be clearly established by demonstrating that less drastic means will not meet the need.

I recognize that for the protection of the public, requirements with respect to qualifications and professional conduct may be imposed on those who practice law. I am not convinced, however, that compulsory membership in an association which may take positions on controversial legislation is necessary to produce adequate results in these areas. This court can impose ethical standards on all lawyers and can require them to contribute toward the expense of enforcement machinery without requiring membership in an association.

By decreeing unification for three years, presumably the court intends to take another look at the problem in 1972; but what can be seen then? If there has been improvement this will not prove that satisfactory gains could not have been made by means less injurious to personal liberty because such means will not have been tried. Against what then will we measure the loss in personal freedom to determine if it has been worth the price. We have the obligation I think to try the less onerous means first

before embarking upon this plan.

Since unification is being decreed I would not approve the provision of the by-laws relating to disciplinary procedures as presently proposed and would require any amendments to the by-laws as well as to the constitution to be approved by this court.