Original
No. 6364.

IN RE UNIFIED NEW HAMPSHIRE BAR.

June 8, 1972.

*N. Michael Plaut, Frederic K. Upton, John E. Pendleton, Laurence F. Gardner, Donald R. Bryant, Shane Devine* (by memorandum), and *Karl W. Clauson,* all orally, and *Hugh H. Bownes* (by memorandum), in support of an order for continuance of the unified bar.

*Martin L. Gross,* orally, in qualified support.

*David H. Souter, John S. Holland, Cameron Kingsley Wehringer* (by memorandum), and *Lawrence E. Spellman,* all orally, opposed.

DUNCAN, J. In the exercise of continuing jurisdiction reserved in December 1968 (*In re Unification of the New Hampshire Bar,* 109 N.H. 260, 248 A.2d 709 (1968)), this court on January 7, 1972, ordered that the Board of Governors of the New Hampshire Bar Association file a report on the functioning of the association under the 1968 order for unification, with recommendations respecting continuation of the unified bar on a more permanent basis after July 1, 1972.

Prior thereto on January 29, 1971, at its mid-winter meeting, the association had voted to approve the report of a special committee recommending that continuance of the unified bar be sought. At the same meeting the association voted to conduct a referendum of the membership on the question: "Should the New Hampshire Supreme Court be requested to enter an order making unification ... permanent?" Forty-one percent of the active membership participated in the referendum, and on February 26, 1972, it was reported that 199 ballots had been cast in favor of such a request, and 150 in opposition.

On March 20, 1972, the Board of Governors filed its report pursuant to the order of January 7, 1972, stating that while certain recommendations submitted by members were under consideration, no action to improve the functioning of the association was required in advance of entry of an order by the court; and requesting that an order be entered indefinitely continuing the New Hampshire Bar as a unified bar, under the existing constitution of the association and the continuing jurisdiction of the court. Thereafter memoranda from members of the bar were invited and received by the court, and a hearing was held on May 4, 1972, at which arguments both for and against continuation were presented.

It appears not to be questioned that during the period since July 1, 1969, the association has made substantial advances in many fields, notably in those pertaining to inter-

nal organization and participation, continuing education and professional competence, discipline and ethics, finances, and legislation. Participation by younger members of the bar in the government and activities of the association and its committees has greatly increased. Such advances cannot help but improve the quality of the legal service available to the people of the State, to the enhancement of the public good.

Those who question the extension of unification assert that these advances are not shown to have resulted from unification, and that they could equally well have been achieved by the voluntary association, had it continued without interruption. Obviously the clock cannot be turned back to test the accuracy of these statements concerning a road not taken. While the issue may not be capable of definitive determination, the conclusion is unavoidable that unification has served as a catalyst to generate new interest and vitality in the association, at a time when swelling numbers of younger attorneys have become members immediately upon admission to practice.

It has been suggested that failure of a majority of the membership to participate in the latest referendum is significant of lack of approval of unification. At this stage of the proceedings however we shall not speculate upon the significance of votes cast or withheld, or of comparison with votes previously taken. The issue now presented is one of policy for the court. *In re Integration of the Bar,* 5 Wis.2d 618, 622, 93 N.W.2d 601, 603 (1958); *see In re Unification of the New Hampshire Bar,* 109 N.H. at 263, 248 A.2d at 711.

Not unexpectedly, the objections to continuance of unification have paralleled in large degree those advanced three years ago. Certain of them, if valid, are correctable by action within the association itself. The constitutionality of compulsory membership was established well before unification was ordered in this jurisdiction. *Lathrop* v. *Donohue,* 367 U.S. 820, 6 L. Ed.2d 1191, 81 S. Ct. 1826 (1961). The issue left undetermined by that decision of the constitutional right of a member to be free from a requirement that he pay dues, some part of which might be used to support causes which he opposed, was not decided by that case and is not presented here. *But see Lathrop* v. *Donohue, id.* at 857-61, 6 L. Ed. 2d at 1213-16, 81 S. Ct. at 1845-47 (concurring opinion of *Harlan,* J.).

The objection is advanced before us that a member who is retained to advocate a position before the legislature may be embarassed to find it opposed by a contrary view, officially adopted by the association to which he is required to belong. We think this does not militate against continuance of unification. Article I of the constitution of the association provides that its activities before the General Court shall be confined "to those matters which are related directly to the administration of justice, the composition and operation of the courts, the practice of law and the legal profession." 12 N.H.B.J. 141 (1970). Thus there is no purpose to engage in purely partisan matters before the legislature, but rather to confine the activities of the association to issues related to the "particular interests and competence" of lawyers. Developments in the Law — Private Associations, 76 Harv. Law Rev. 983, 1065-66 (1963). The provisions of article I may be subject to refinement by means of "suggested policies and guidelines" now under review. Clearly it is open to any member to participate in the formulation of policies, and if need be to oppose association action in the legislative field. The objection deserves consideration by the association, but does not require restoration of the association to a voluntary status.

We conclude that the association has prospered and grown in stature under unification, and that unification should now be continued without limitation of time, under the court's continuing jurisdiction.

*So ordered.*

GRIMES, J.,  dissented; the others concurred.

GRIMES, J.,  *dissenting:* Even granting our consitutional right to do so, a point which is open to question (*see Lathrop* v. *Donohue,* 367 U.S. 820, 6 L. Ed. 2d 1191, 81 S. Ct. 1826 (1961)), I cannot cast my vote to compel all lawyers to belong to and financially support an association which may espouse causes with which they may disagree, unless there is clear evidence of a compelling necessity to serve some public good as distinguished from the association's good. I see no such evidence here.

Many lawyers find this compulsory membership offensive

and the effect upon their personal liberty is not diminished because the causes are "confined to issues related to the particular interests and competence of lawyers." These issues can and do engender as deep feelings as any others.

I must disagree that it is not questioned that "substantial" advances have been made in the last three years. I also contend that there are no improvements that can be shown to have resulted from unification. Nothing has been presented which induces me to retreat from what was said in dissent three years ago. *In re Unification of the New Hampshire Bar,* 109 N.H. 260, 269, 248 A.2d 709, 715 (1968). Therefore, I cannot in good conscience concur.