Original
No. LD-92-012

## PETITION OF MICHAEL J. TOCCI

April 23, 1993

*Michael J. Tocci*, by brief and orally, *pro se.*

*Tober Law Offices, P.A.*, of Portsmouth (*Stephen L. Tober* on the brief and orally), for the New Hampshire Bar Association.

*Abramson, Reis & Brown*, of Manchester (*Stanley M. Brown* on the brief), by brief as *amicus curiae* on behalf of himself and several past presidents of the New Hampshire Bar Association.

JOHNSON, J. Michael J. Tocci petitions this court for reinstatement to the practice of law, repeal of Supreme Court Rule 42A, and

"disintegration" of the State Bar. He was suspended from the practice of law pursuant to Rule 42A for non-payment of dues to the New Hampshire Bar Association (NHBA). In support of his petition, he argues that this court usurped the authority of the legislature by unifying the bar, *see In re Unification of the New Hampshire Bar*, 109 N.H. 260, 248 A.2d 709 (1968); *In re Unified New Hampshire Bar*, 112 N.H. 204, 291 A.2d 600 (1972), and by promulgating Rule 42A. He also argues that his suspension pursuant to Rule 42A violated his freedoms of speech, religion, and association, as well as his rights to privacy and of conscience, and deprived him of due process and equal protection. We disagree with Tocci's contentions and, therefore, deny his petition.

Tocci began his legal studies at the Oral Roberts University O.W. Coburn School of Law, when the school was provisionally accredited by the American Bar Association (ABA). After Tocci completed his second year, the university conveyed the law school to CBN University, an academic institution founded by M.G. "Pat" Robertson of the Christian Broadcasting Network. Tocci continued his studies at CBN University Law School, but Coburn's provisional accreditation did not transfer to the new school. As a result, Tocci graduated from CBN University Law School, a non-accredited school. He then applied for permission to take the New Hampshire Bar Examination. Although Supreme Court Rule 42(4)(b) conditions such permission upon graduation from an ABA-accredited law school, this court granted Tocci's application for an exception to the rule. *See* Sup. Ct. R. 1. Tocci passed the examination and was admitted to the practice of law in May 1988.

Tocci's disagreements with the NHBA began soon afterward; he paid his 1988–89 NHBA dues six months late. The following year he did not pay his dues at all and, consequently, was suspended from practice in August 1990 pursuant to Rule 42A. He then petitioned for reinstatement, depositing his 1989–90 dues in escrow. This court dismissed his petition for his failure to file a brief, but paid his escrowed dues to the NHBA and ordered him reinstated. Tocci subsequently declined to pay his 1990–91 dues, precipitating his present Rule 42A suspension and petition for reinstatement.

Tocci's first argument for reinstatement is that this court usurped the authority of the legislature by unifying the bar and promulgating Rule 42A. Rule 42A states:

> "Whenever the bar membership of a person admitted to the bar of this State shall have been suspended for non-payment of dues under the Constitution and By-Laws of the New

Hampshire Bar Association and not have been reinstated within six (6) months, an order shall be issued suspending that person from the practice of law in this State. Reinstatement thereafter shall be only by order, upon petition to this court following reinstatement to membership in the Bar Association in accordance with the provisions of said Constitution and By-Laws."

The power to regulate the bar, Tocci maintains, belongs to the legislative, not to the judicial, branch of government. He urges us to repeal Rule 42A, overrule our unification decisions, and "disintegrate" the bar. Finding our previous holdings constitutionally sound, we decline his requests.

In *In re Unification*, we ordered the unification of the State Bar for a trial period of three years. *In re Unification*, 109 N.H. at 268, 248 A.2d at 715. A unified bar, we explained,

"is a Bar organization in which membership and payment of dues is required as a condition of practicing law in a state. When such a Bar is established all persons who have been or are thereafter admitted to practice as an attorney in that state become members of the State Bar Association subject to its constitution and by-laws, including the requirement to pay dues, and entitled to all the benefits to be derived from such an organization."

*Id.* at 262, 248 A.2d at 711 (citations omitted). As now, the first question before the court in *In re Unification* was whether the authority to unify the bar resided in the judicial branch. Citing *Ricker's Petition*, 66 N.H. 207, 29 A. 559 (1890), we concluded:

"We hold that the determination of whether the administration of justice in New Hampshire will best be served by the compulsory enrollment of all the members of the Bar of this state into one unit to which the members must pay dues necessary to its efficient operation is an integral part of the inherent power of this court to regulate the practice of law and to supervise those engaged therein in New Hampshire. Lawyers being thus uniquely related to, and subject to supervision and regulation by the judiciary, we hold that this court has jurisdiction to decide the issue of the unification of the Bar of this state presented by the petition before us. . . .

. . . If exercised to raise the quality of professional services of lawyers and to enhance the administration of justice, a supreme court may constitutionally decree the creation of

a unified Bar and require that the costs of improving the profession be shared by its members, the lawyers admitted to practice in the state."

*In re Unification*, 109 N.H. at 264, 248 A.2d at 712. Three and one half years later, convinced that unification was indeed serving the purposes for which it had been designed, we made our unification order permanent. *In re Unified*, 112 N.H. 204, 291 A.2d 600.

■ ■ Nothing in Tocci's lengthy brief persuades us that these unification decisions should be overruled. Our prior decisions were reinforced when the State Constitution was amended in 1978 to provide, in part II, article 73-a, that the chief justice of this court, "shall, with the concurrence of a majority of the supreme court justices, make rules governing . . . the practice and procedure to be followed in all [the] courts" of New Hampshire. We must assume that the judicial branch possesses all the authority necessary to perform its judicial functions; otherwise, the judicial power vested in the courts by part II, article 72-a becomes meaningless. Because the judicial branch requires a qualified and ethical bar to perform its functions, we hold that it has the inherent power to regulate the bar to ensure that the bar is, in fact, qualified and ethical. *See In re Integration of Nebraska State Bar Ass'n*, 133 Neb. 283, 287–90, 275 N.W. 265, 267–68 (1937). Unifying the State Bar is a reasonable method of achieving this goal.

■ Our decision in *Petition of Chapman*, 128 N.H. 24, 509 A.2d 753 (1986), bolsters our conclusion. We stated:

"At the outset, we note that the constitutionality of the integrated, or unified, bar is not at issue here. In addition to the fact that the history of the unified bar since its creation is one of impressive accomplishment and service to the public and lawyers of our State, the success of such a challenge is made all the more unlikely by decisions of both the United States Supreme Court and this court. *See Lathrop v. Donohue*, 367 U.S. 820 (1961); *In re Unification of the New Hampshire Bar*, 109 N.H. at 264, 248 A.2d at 712; *see also* Note, *First Amendment Proscriptions on the Integrated Bar: Lathrop v. Donohue Re-examined*, 22 Ariz. L. Rev. 939, 940 (1980). The Association has played a crucial role in maintaining and upgrading the quality of the bar in New Hampshire. The lawyer referral network has increased the availability of, and access to, lawyers in this State. Its public

education and information efforts have been exemplary, and its continuing education program is among the best. The various committees of the Association provide substantive and procedural assistance both to the bar and to the courts. Unification of the bar may not be the sole reason for these successes, but we are confident that it has played a substantial role in contributing to these accomplishments."

*Id.* at 29, 509 A.2d at 757. Furthermore, as we noted in *In re Unification*, "[t]his power of the supreme court of a state or territory to integrate its bar without any specific statutory authorization or direction to do so has been upheld, to the best of our knowledge, in every jurisdiction where the issue has been raised." *In re Unification*, 109 N.H. at 264, 248 A.2d at 712; *see generally Keller v. State Bar of California*, 496 U.S. 1, 7–9 (1990). Accordingly, we decline to accept Tocci's characterization of our unification orders as an unconstitutional usurpation of legislative authority. As Rule 42A is fully consistent with the unification orders, it does not suffer constitutional infirmity.

■ Tocci next argues that Rule 42A and our unification orders violate his federal and State constitutional freedoms of speech, religion, and association; right to privacy; and his State constitutional rights of conscience. He does not explain how his freedom of religion and right to privacy, however, were in any way affected by his bar suspension; consequently, we do not address these claims any further. Tocci's freedom of association claim can also be dispensed with by noting that we unequivocally resolved this issue in *In re Unification*:

"We do not share the views of opponents to the petition [for unification] who maintain that a unified Bar constitutes coercion which violates an individual member's right of association, or rather not to associate, or his alleged right to resign from any organization or that it constitutes enforced professional guildism. *Lathrop v. Donohue*, 367 U.S. 820. Because the legal profession by its very nature comes under the supervision of the judiciary, we do not feel that if a court, on a balance of interests, finds it in the public welfare to provide that lawyers, often called officers of the court, must be members of a unified Bar and pay reasonable dues for its support, this would constitute a nefarious guild. Neither the proposed constitution or by-laws, filed with the petition, compels a member of the proposed unified Bar to associate

with his [or her] fellow lawyers. On the contrary any lawyer in this state will be free, to attend, or not, its meetings, to belong to any other voluntary Bar Association, or to even establish a competing one. The obligation to remain a member of a unified Bar, if one is admitted to practice law in the state, and to pay dues thereto constitutes proper regulation of those engaged in the practice of law. *Lathrop v. Donohue*, 10 Wis. 2d 230, 242. *Id.*, 367 U.S. 820, 843. Nor is it 'more undemocratic than the requirement of learning and good moral character of all who seek the privilege of practicing law.' *In re Integration of the Bar*, 5 Wis. 2d 618, 622."

*In re Unification*, 109 N.H. at 266–67, 248 A.2d at 713–14. Again, we see no reason to depart from this well-reasoned decision and conclude that Rule 42A and our unification decisions violate neither Tocci's federal nor his State constitutional rights to associate.

We address Tocci's free speech and rights of conscience claims together. *See Chapman*, 128 N.H. at 29, 509 A.2d at 757. He makes nine assertions, listed below, concerning the NHBA and Rule 42A to support his claims.

(1) The NHBA is an illegal monopoly.

(2) Rule 42A causes an impermissible burden on interstate commerce.

(3) Rule 42A creates an unconstitutional tax on commerce.

(4) Rule 42A infringes upon an out-of-state attorney's right to travel and seek employment in another state.

(5) Rule 42A violates the prohibition against involuntary servitude.

(6) The NHBA is closely associated with the ABA, which endorses policies Tocci opposes.

(7) The NHBA is closely associated with the New Hampshire Civil Liberties Union (NHCLU), which endorses policies Tocci opposes.

(8) The NHBA frequently honors and entertains judges.

(9) The NHBA has embraced militant feminism.

As all of the above morally offend Tocci, he maintains that his rights of conscience are violated by our rule that he must belong to and financially support the NHBA in order to practice law in New Hampshire.

The first five listed assertions are direct assaults on the legitimacy of the unified bar. Because we addressed the soundness of our

unification orders above, and because we see no independent merit in any of these collateral attacks, we discuss them no further. We do not recognize moral opposition to a unified bar as a ground for relief pursuant to a rights of conscience or free speech claim.

 Tocci's sixth and seventh listed assertions allege close association of the NHBA with the ABA and the NHCLU. Specifically, he states in his brief that

"the American Bar Association, for no purpose legitimately related to its supposed function, endorses policies that are inimical to the Christian faith of the Petitioner, as well as his political ideology. The New Hampshire Bar Association regularly reports on and supports the conduct of the American Bar Association, which practice is subsidized by the dues compelled of the Petitioner.

The New Hampshire Bar Association is also closely affiliated with the New Hampshire Civil Liberties Union, the conduct and ideology of which organization [are an] overt attack upon the religious freedom and beliefs of historic orthodox Christians. With the close association of the New Hampshire Bar Association with the New Hampshire Civil Liberties Union, the Petitioner [is] being forced to constructively associate with such irrational persons who would openly defame the Governor of this state as a 'Nazi[,'] for courageously holding to his principles and belief that life begins at conception, and that the statutes criminalizing abortion protect a valid State interest in upholding the sanctity of life. Whereas it is the stated public policy of the state of New Hampshire to save lives, not destroy them [RSA 151-B:1], which public policy the New Hampshire Civil Liberties Union is committed to undermining."

Nowhere in this statement, however, does Tocci cite to any particular instance of the NHBA officially adopting an ABA or NHCLU position or endorsing either group. Without such an allegation, he asserts no justiciable claim that his free speech or conscience rights are violated.

 Tocci's eighth assertion, as found in his brief, is that

"[t]he Petitioner is also conscientiously objecting to the practice of the New Hampshire Bar Association in frequently honoring and entertaining members of the judiciary, which practice the Petitioner, as a citizen, finds repugnant to

the princip[le] of 'a judiciary impartial as the lot [of] human-
ity will admit[.'] This frequent association with, and base
flattering of, the members of the judiciary is plainly intend-
ing to induce the judiciary to be more concerned with main-
taining good relations with members of the New Hampshire
Bar Association than in impartial administration and the
protection of the rights of citizens. This dangerous and un-
ethical association of the bar and the judiciary is subsidized
by the dues paid to the New Hampshire Bar Association the
Petitioner would be forced to pay if [he] were to comply with
Rule 42A. This is an activity in which the Petitioner will not
participate."

Although more specific in its allegations than the last assertion, this
assertion also fails to state a valid claim for relief. In *Chapman*, 128
N.H. at 31, 509 A.2d at 758, this court declared that, in the exercise
of our continuing supervisory authority over the NHBA, we are "ob-
ligated to interpret the limits on bar activities so as to preclude the
first amendment infringement that would result if the [NHBA] were
to take positions on issues outside the scope of those responsibilities
that justify compelling lawyers to belong to it." Thus, we prevent
first amendment problems—and comparable State constitutional
problems—by limiting the NHBA to its proper role. So long as the
NHBA acts within this role, there are no such constitutional viola-
tions.

■ ■ Tocci's assertion alleges no NHBA activities "outside the
scope of those responsibilities that justify compelling lawyers to be-
long to it." *Id.* Although Tocci decries the NHBA's alleged habit of
"frequently honoring and entertaining members of the judiciary,"
respect for the judiciary and communication with its members about
the administration of justice are valid objects of the NHBA. Tocci
cites no specific instances of alleged bias resulting from this conduct,
averring instead that the NHBA intends, through "base flattering,"
"to induce the judiciary to be more concerned with maintaining good
relations with members of the New Hampshire Bar Association than
in impartial administration and the protection of the rights of citi-
zens." We fail to see, however, how "maintaining good relations with
members of the New Hampshire Bar Association" is incompatible
with "impartial administration and the protection of the rights of
citizens." Every attorney licensed to practice in New Hampshire be-
longs to the NHBA. As lawyers may be hired to represent either side
of an issue, every conceivable law-related "interest group" has a po-

tential voice in the NHBA. No one particular group could hope to gain favor with a judge merely by official association of the NHBA with the judiciary.

Tocci's ninth assertion is that the NHBA has embraced militant feminism. His assertion is expressed in his brief as follows:

> "Feminism is inimical to the fundamentals of the Petitioner's Christian faith, and by reason of observation, the Petitioner is convinced that acquiescence to the feminist ideology bears nothing but evil fruit, among which are the degeneration of the American family, the debilitating divorce rate in the United States, the inexcusable and avoidable injury to children caused by divorce, the sexually promiscuous 'liberation' of modern women . . . , the wanton and inexcusable slaughter of the innocent unborn; the estrangement of the sexes (separated, not equal), the escalation of domestic violence, the escalation of teenage pregnancy, the escalation of institutionalized child neglect (aka day-care), the discriminatory displacement of men from necessary employment, and the general loss of true femininity—that gentleness of spirit that is fundamental to civilization."

While we do not question the strength and sincerity of Tocci's belief as voiced in this passage, we note the absence of any allegation that the NHBA has taken an official position on feminism. As explained above, this absence is fatal to Tocci's claim. We acknowledge, however, that a broad reading of his brief, combined with judicial notice of the present composition and structure of the NHBA, would likely produce the more specific argument that Tocci is morally opposed to the admission of women into the practice of law and into positions of authority within the NHBA, both of which the NHBA either endorses or allows.

 If we assume that our expansive interpretation of his argument is justified, such a reading would nevertheless avail Tocci nothing. Affirming the equality of women in the legal profession is not "outside the scope of those responsibilities that justify compelling lawyers to belong to [the NHBA]." *Chapman*, 128 N.H. at 31, 509 A.2d at 758. Our constitution guarantees that "[e]quality of rights under the law shall not be denied or abridged by this state on account of . . . sex," N.H. CONST. pt. I, art. 2, and the right of qualified women to practice law here was established over one hundred years ago in *Ricker's Petition*, 66 N.H. 207, 29 A. 559 (1890). It is quintessentially within the scope of the NHBA's responsibilities to ensure

compliance with these mandates of equity and fairness. In sum, we hold that neither Rule 42A nor our unification orders violate Tocci's State or federal constitutional free speech rights or his State constitutional rights of conscience.

 We now turn to Tocci's argument that his suspension from the practice of law pursuant to Rule 42A violated his right to due process under the State and Federal Constitutions. In particular, he contends that he was suspended without adequate notice or opportunity to be heard. *See Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 542 (1985); *Royer v. State Dep't of Empl. Security*, 118 N.H. 673, 678, 394 A.2d 828, 831 (1978). Addressing the notice issue first, we quote from Tocci's statement of the case, contained in his brief:

> "The Petitioner was admitted to the practice of law in the State of New Hampshire in May of 1988. Later that year he received a bill from the New Hampshire Bar Association for, among other things, dues. The Petitioner did not agree with the conduct or official pronouncements of the New Hampshire Bar Association, and declined to pay the dues—an exercise of his freedom of association. *He was subsequently informed by the secretary of the New Hampshire Bar Association that he would be suspended from the practice of law by the New Hampshire Bar Association if he did not pay his dues*. The Petitioner informed the Office of the Clerk of the Supreme Court of New Hampshire of the response of the New Hampshire Bar Association, inquiring of said office of the legality of the New Hampshire Bar Association's position.
>
> In the meantime, the Petitioner spoke with one of his colleagues concerning the rude and imperious response of the New Hampshire Bar Association. *At this time the Petitioner was informed by his colleague of the existence of certain orders of the Supreme Court of New Hampshire compelling membership in the New Hampshire Bar Association as a condition of practicing law in the State of New Hampshire*. At first, the Petitioner could hardly believe that such could be the case—but *when his research confirmed the fact of the existence of such orders*, he complied by paying the dues."

(Emphasis added.) This passage plainly confirms the NHBA's argument that Tocci was well aware of the price of not paying his dues long before his current suspension went into effect.

■ We also reject Tocci's contention that he was denied an adequate opportunity to be heard prior to the deprivation of his property interest—his license to practice law in New Hampshire. Although often "some kind of a hearing" must be afforded pre-termination, *Loudermill*, 470 U.S. at 542 (quotation omitted); *see also Royer*, 118 N.H. at 679, 394 A.2d at 831, a person cannot "insist on a hearing in order to argue that the decisionmaker should . . . depart from legal requirements," *Loudermill*, 470 U.S. at 543 n.8; *see Dixon v. Love*, 431 U.S. 105, 113–14 (1977). In the absence of a factual dispute in this case, the due process clause does not require an opportunity to be heard. *See Atlantic Richfield Co. v. United States*, 774 F.2d 1193, 1203 (D.C. Cir. 1985). Here, Tocci disputes none of the facts precipitating his current Rule 42A suspension. He failed to pay his NHBA dues, knowing from previous experience that such failure would lead to suspension from the NHBA as well as from the practice of law, and remained suspended from the NHBA for over six months without being reinstated to NHBA membership. Rule 42A requires no more. As Tocci disputes only the legality of Rule 42A, and not the factual correctness of this particular application of the rule, we hold that neither the State nor the Federal Constitution entitled him to an opportunity to be heard prior to his suspension. *See Love*, 431 U.S. at 113–15; *Atlantic Richfield*, 774 F.2d at 1203. His present petition for reinstatement and argument before this court provides him with an adequate opportunity to challenge the rule's legality.

Finally, Tocci argues that our unification orders and his suspension pursuant to Rule 42A violate his right to equal protection under the State and Federal Constitutions by "depriv[ing] those in the profession of attorney and counselor from the right to be controllable by only those laws [to] which they, or their representative body, have given consent, and the right to an impartial interpretation of the laws, and administration of justice." As we have affirmed the constitutionality of our unification orders and Rule 42A, we decline to address Tocci's equal protection argument further.

What we stated above with respect to the strength and sincerity of Tocci's beliefs concerning his argument on militant feminism applies to all of his arguments. He strongly and sincerely has concluded that his conscience compels him not to pay dues to the NHBA. We have concluded, however, that the unification of the New Hampshire Bar is constitutional, and to the extent Tocci invites us to revisit this issue as a matter of policy, we decline his invitation. Consequently, to remain a lawyer in New Hampshire Tocci must pay his NHBA dues

and his assessment to support the professional conduct committee. If these are paid and brought up to date within ninety days, we will reinstate Tocci to the practice of law in this State. If not, his suspension shall remain in effect.

*Petition denied; so ordered.*

All concurred.