Original
No. 2003-482

PETITION OF NEW HAMPSHIRE BAR ASSOCIATION

Argued: March 10, 2004
Opinion Issued: June 14, 2004

*Upton & Hatfield, LLP*, of Concord (*Frederic K. Upton & a.* on the brief, and *Mr. Upton* orally), for the petitioner.

*Peter W. Heed*, attorney general (*Suzanne M. Gorman*, senior assistant attorney general, and *Amy B. Mills*, assistant attorney general, on the brief, and *Ms. Gorman* orally), for the State.

*Richard J. Lehmann*, senate legal counsel, and *Betsy B. Miller*, house legal counsel, by brief, for the President of the New Hampshire Senate and the Speaker of the New Hampshire House of Representatives, as *amici curiae*.

NADEAU, J. The petitioner, the New Hampshire Bar Association (Association), invokes the original jurisdiction of this court, SUP. CT. R. 11, in requesting that Laws 2003, chapter 250, codified at RSA 311:7-g to :7-i (Supp. 2003), be declared unconstitutional. We accept jurisdiction because the challenged statute which requires the Association to conduct and be bound by a referendum of its membership on the issue of unification directly conflicts with a decades-old order of this court mandating unification. It is the enactment of the legislation, not the results of the referendum, that makes an immediate resolution of this issue both necessary and prudent.

We directed the Board of Governors of the Association to carry out the referendum requirement set forth in RSA 311:7-g, III, and to retain the ballots, under seal, without counting them. Accordingly, the Association prepared and mailed to its membership in February 2004, ballots which it has now collected and sealed.

It is essential to the proper oversight of the Association that the current impasse be resolved promptly so that the Bar and the public will not share uncertainty as to which branch of government has authority to select the structure of the Association and, therefore, the organization through which it must fulfill its professional and ethical obligations.

The Bar was first unified by this court in 1968 for a three-year trial period. *In re Unification of the New Hampshire Bar*, 109 N.H. 260, 268 (1968). Once unified, membership and the payment of dues to the Association were required of all lawyers as a condition to the practice of law in this State. *Id.* at 262. In ordering unification, we acted to improve the administration of justice, to foster and maintain high standards of professional conduct, competence, and public service on the part of lawyers, and to ensure the existence of a continuing program of legal education for the legal profession. *Id.* at 263-64. We did so on the basis that requiring compulsory enrollment of all members of the Bar of this State into one unit was "an integral part of the inherent power of this court to regulate the practice of law and to supervise" those who were engaged in it. *Id.* at 264.

In 1972, this court again examined unification and concluded that the Association had benefited as an organization from its three-year experience, and had made substantial strides in internal organization, member participation, continuing legal education, professional competence, discipline, ethics, and finances. *In re Unified New Hampshire Bar*, 112 N.H. 204, 205-06 (1972). Consequently, we ordered the Bar unified on a permanent basis. *Id.* at 207.

For thirty-one years thereafter, no legislation affecting the Association's unified status was enacted. However, during the 2003 legislative session, the New Hampshire General Court enacted RSA 311:7-g to :7-i. The Association argues that RSA 311:7-g and :7-h are unconstitutional. We agree that subsection :7-g is unconstitutional because the statute encroaches upon inherent judicial authority.

*I. RSA 311:7-g*

RSA 311:7-g is entitled "State Bar Association Membership; Vote Required" and provides:

> I. The supreme court, pursuant to its power to regulate the practice of law under this chapter and its continuing supervisory authority over attorneys practicing before courts of this state, may assess fees for the purpose of regulating the practice of law and for maintaining a professional conduct committee.

> II. The supreme court may require all persons engaged in the practice of law in this state to be members of the New Hampshire Bar Association; provided that the members of the Bar Association have approved the requirement pursuant to paragraph III.

III. The board of governors of the New Hampshire Bar Association shall place on the ballot with the election of officers of the association, the following question: "Shall membership in the New Hampshire Bar Association be required for all attorneys licensed to practice in this state?" An affirmative vote of a majority of those voting on the question, shall allow for the requirement by the supreme court under paragraph II. Approval by the membership under this paragraph shall be valid for a 5-year period beginning on the date of the affirmative vote.

RSA 311:7-g, I-III.

The Association contends, among other things, that this statute "infringes on the authority of the judicial branch to regulate the Bar in violation of the New Hampshire Constitution." (Emphasis omitted.) Specifically, the Association argues that "unification [is] the sole business of the Court," because the court retains "constitutionally-conferred authority to regulate the Bar." The Association further argues that the legislative enactment constitutes "an impermissible and affronting intrusion under the Separation of Powers Clause" and should be struck down as unconstitutional.

The State disagrees, contending that "the regulation of the ... [A]ssociation and the practice of law in New Hampshire has historically been shared between the legislative and judicial branches of government." Because both branches have overlapping authority, the State argues that "either branch can act absent the initiative of the other." Moreover, the State argues that "assuming that regulation of the practice of law is, at least in part, an essential judicial function," nothing in RSA 311:7-g prevents the court from carrying out that function by, for example, prescribing ethical and educational standards for lawyers, as well as requiring them to make payments into public protection funds.

It is axiomatic that "the constitutionality of a legislative act is to be presumed." *Petition of Governor and Executive Council*, 151 N.H. 1, 4 (2004) (quotation and brackets omitted). "However, if upon examination of [a] statute, there is a clear conflict with the Constitution[,] the court must declare the statute inoperative because the Constitution, and not the statute, is the paramount law." *Hynes v. Hale*, 146 N.H. 533, 535 (2001) (quotation omitted). Because we conclude that RSA 311:7-g is in clear conflict with Part I, Article 37 of the New Hampshire Constitution, we declare it to be unconstitutional.

Part I, Article 37 of the New Hampshire Constitution provides, in pertinent part: "In the government of this state, the three essential powers thereof, to wit, the legislative, executive, and judicial, ought to be kept as

separate from, and independent of, each other, as the nature of a free government will admit." We have recognized, however, that the three branches of government, while distinct, often must "move in concert," whenever possible, as the practical and efficient operation of government is not served by the erection of "impenetrable barriers between the branches." *Opinion of the Justices*, 113 N.H. 287, 290 (1973); *see also Hynes*, 146 N.H. at 537.

Ideally, then, there should exist "a cooperative accommodation among the three branches of government." *McKay v. N.H. Compensation Appeals Bd.*, 143 N.H. 722, 726 (1999) (quotation omitted). Indeed, a spirit of comity encourages cooperation between the branches in furtherance of mutual goals. *See Petition of Mone*, 143 N.H. 128, 135-36 (1998). But comity has limits. It does not constitutionally permit one branch to usurp the essential power of another. *See Petition of Governor*, 151 N.H. at 9; *see also State v. Lindsey*, 632 N.W.2d 652, 659 (Minn. 2001). To do so would violate the separation of powers doctrine. *Petition of Governor*, 151 N.H. at 9; *see also* N.H. CONST. pt. I, art. 37. When the actions of one branch of government defeat or materially impair the inherent functions of another branch, such actions are not constitutionally acceptable. *In re Rosenkrantz*, 59 P.3d 174, 208 (Cal. 2002), *cert. denied*, 538 U.S. 980 (2003).

■ We conclude, consistent with our prior decisions, that the judicial branch of government retains ultimate authority to regulate the practice of law, and that in the exercise of that authority it is necessarily permitted to determine whether unification of the Bar is advantageous. The authority of the judicial branch is not the result of legislative inaction as suggested by the State, but is derived from its inherent authority to regulate the practice of law. *Petition of N.H. Bar Ass'n*, 110 N.H. 356, 357 (1970) ("The power and authority of the supreme court to supervise and regulate the practice of law has been recognized and acknowledged from an early date by custom, practice, judicial decision and statute."). In so holding, we conform to our precedent and share the view of other jurisdictions. *Petition of Tocci*, 137 N.H. 131, 136 (1993); *Washington State Bar Ass'n v. State*, 890 P.2d 1047, 1050-52 (Wash. 1995); *Integration of Bar Case*, 11 N.W.2d 604, 618-19 (Wis. 1943); *In re Integration of State Bar of Oklahoma*, 95 P.2d 113, 114 (Okla. 1939). Indeed, "[n]o court has held that the highest court of any state is without authority to unify its bar." *Petition of Tennessee Bar Ass'n*, 532 S.W.2d 224, 229 (Tenn. 1975).

"Attorneys are officers of the court," *Bryant's Case*, 24 N.H. 149, 154 (1851), and ensuring their high caliber and competence through their admission into and exclusion from the Bar has long been recognized as an "exercise of judicial power," *Ricker's Petition*, 66 N.H. 207, 211 (1890)

(quotation omitted). "In most, if not all, of the jurisdictions of this country, it is recognized that [t]he practice of law is so intimately connected with the exercise of judicial power in the administration of justice that the right to define and regulate the practice naturally and logically" belongs to the judiciary. *Wallace v. Wallace*, 166 S.E.2d 718, 723 (Ga. 1969) (quotation omitted). Consequently, "[r]egulating the practice of law is a core function of the judicial branch." *Rosenkrantz*, 59 P.3d at 211.

Indeed, for more than a century, this inherent authority has served as a fundamental tenet of our jurisprudence. Beginning with *Ricker's Petition* in 1890, Chief Justice Doe, writing for a unanimous court, noted that, "The constitution . . . vests in the courts all the judicial power of the state. The constitutional establishment of such courts appears to carry with it the power to establish a bar to practice in them." *Ricker's Petition*, 66 N.H. at 210 (quotation omitted). In 1968, Justice Lampron, in discussing Chief Justice Doe's analysis, wrote: "[T]his court held in *Ricker's Petition* that the authority to make reasonable rules for the admission and removal of members of the bar is necessarily inherent in every court, in order to enable it to discharge its duties, as much so as to preserve order." *In re Unification of the New Hampshire Bar*, 109 N.H. at 263 (citation and quotations omitted).

During the past three decades, this court has repeatedly recognized, without exception, that the authority to resolve the issue of unification lies within the judiciary's inherent power. When first confronted with the issue of unification in 1968, we stated:

> We hold that the determination of whether the administration of justice in New Hampshire will best be served by the compulsory enrollment of all the members of the Bar of this state into one unit to which the members must pay dues necessary to its efficient operation is an integral part of the inherent power of this court to regulate the practice of law and to supervise those engaged therein in New Hampshire. *Lawyers being thus uniquely related to, and subject to supervision and regulation by the judiciary, we hold that this court has jurisdiction to decide the issue of the unification of the Bar of this state* . . . .

*Id.* at 264 (emphasis added). In 1972, when the court ordered indefinite unification pursuant to "the court's continuing jurisdiction," *In re Unified New Hampshire Bar*, 112 N.H. at 207, it explicitly deemed the issue of unification to be "one of policy for the court," *id.* at 206.

In recent years, this court has twice confirmed its inherent constitutional power to resolve the issue of unification. In 1986, in response to a challenge brought by an individual member of the Association, we

stated that: "This court, in the exercise of its inherent constitutional power to regulate the practice of law, ordered the integration of the bar and retains continuing supervisory authority over the Association and its activities." *Petition of Chapman*, 128 N.H. 24, 31 (1986). In 1993, while specifically addressing whether the power to regulate the Bar belonged to the legislative or judicial branch, we held:

> We must assume that the judicial branch possesses all the authority necessary to perform its judicial functions; otherwise, the judicial power vested in the courts by part II, article 72-a becomes meaningless. Because the judicial branch requires a qualified and ethical bar to perform its functions, we hold that it has the inherent power to regulate the bar to ensure that the bar is, in fact, qualified and ethical. Unifying the State Bar is a reasonable method of achieving this goal.

*Petition of Tocci*, 137 N.H. at 135 (citation omitted). Based upon our considerable precedent, we conclude that the judicial branch has full authority to regulate the practice of law, which includes the right to decide whether unification is of assistance in the exercise of that authority.

■ Given the often overlapping actions of the branches, "[a]dmission to the practice of law and regulation of the conduct of attorneys in this State has been dealt with as an area of shared responsibility between the legislative and judicial branches." *Rousseau v. Eshleman*, 128 N.H. 564, 567 (1986). Although it is in the prerogative of the judicial branch "to regulate the practice of law, the legislature, under the police power, may act to protect the public interest, but in so doing, it acts in *aid* of the judiciary and *does not supersede or detract* from the power of the courts." *Wallace*, 166 S.E.2d at 723 (emphasis added). The regulation of the practice of law is a core judicial function. *See First Just. of Bristol v. Clerk-Magistrate*, 780 N.E.2d 908, 916 (Mass. 2003); *see also Case v. Lazben Financial Co.*, 121 Cal. Rptr. 2d 405, 415 (Ct. App. 2002). Because RSA 311:7-g has set in motion a vote on unification and may result in de-unification, contrary to our inherent authority and earlier order to regulate the practice of law through mandatory unification, we conclude that the statute is unconstitutional. The legislature, in effect, has created a mechanism by which a core function of the judiciary is usurped. *See Petition of Governor*, 151 N.H. at 9. Moreover, the statute allows those who participate in the referendum to annul our long-ago decision to unify the Bar. The legislature cannot, by empowering members of the Bar to negate a court order, do indirectly what it is prohibited from doing directly. For these reasons, we declare RSA 311:7-g to be unconstitutional.

The State argues that even if regulation of the legal profession is a core judicial function, RSA 311:7-g does not preclude the court from otherwise carrying out that function. We agree with the State that we might well be able to establish educational and ethical standards through different mechanisms. Indeed, we may even decide in the future to reexamine the question of unification. Because inherent constitutional authority allows the judicial branch to determine the most effective way to regulate the practice of law, however, we must remain free to structure the organized Bar as we deem necessary. The means by which the judicial branch chooses to organize the Bar, which it is charged with supervising, cannot be restricted by the other branches of government. *See Sams v. Olah*, 169 S.E.2d 790, 796 (Ga. 1969) (noting that the judiciary cannot "be circumscribed or restricted in the performance of its duties related to its inherent power to regulate the practice of law"); *see also* 16A AM. JUR. 2D *Constitutional Law* § 259 (1998) (courts cannot "be hampered or limited in the discharge of their functions by either of the other two branches"). Otherwise, inherent judicial power is compromised. Consequently, because we have elected to regulate the practice of law through unification, RSA 311:7-g, which permits de-unification without our involvement and contrary to our specific order, encroaches upon inherent judicial authority.

## II. RSA 311:7-h

Given the severability provision in the statutory scheme, RSA 311:7-i, and our determination that RSA 311:7-g is unconstitutional, we must now ask whether the remaining provision being challenged by the Association, RSA 311:7-h, is likewise unconstitutional. The statute, entitled, "Bar Association Legislative Activities," states:

I. The New Hampshire Bar Association, *if membership is mandatory for attorneys under RSA 311:7-g*, shall be prohibited from using any part of dues paid by its members for the purpose of lobbying or influencing the general court on any matter, except as provided in paragraph III.

II. *If membership in the New Hampshire Bar Association is mandatory for attorneys under RSA 311:7-g*, no person shall be permitted to engage in legislative activities on behalf of the New Hampshire Bar Association for the purpose of lobbying or influencing the general court on any matter, except as provided in paragraph III.

III. The Bar Association may use a part of dues paid by its members, and may engage a person to lobby or influence the legislature on its behalf provided the Association:

(a) Limits its activities before the general court to those matters which are directly related to the regulation of the legal profession and improving the quality of legal services available to the people of the state. The scope of such permissible activities shall be narrowly defined; and

(b) Has determined that substantial unanimity exists within the bar as a whole in agreement with the position taken on a matter.

IV. Nothing in the section shall prevent officers and members of the Bar Association from appearing before the general court to express their views as individuals, as members of voluntary associations, or as representatives of clients.

V. Any member of the New Hampshire Bar Association, *if membership is mandatory for attorneys under RSA 311:7-g,* may refuse to pay that portion of the Bar Association dues that are used for lobbying or influencing the legislature or other political matters.

RSA 311:7-h, I-V (emphasis added).

The Association argues that because this statute "significantly restrict[s] the legislative activities of the Bar," RSA 311:7-h violates free speech protections afforded to the Association by the United States Constitution, as well as the State Constitution. The State disagrees, contending that nothing in the statute violates the Association's free speech protections. Among other things, the State argues that, "To the extent the Bar Association has any free speech rights at all, they are not identical to the rights of voluntary political organizations and individuals."

■ We need not decide the constitutionality of RSA 311:7-h. On its face, the provision regulates the Association's activities before the legislature *when unification is specifically achieved pursuant to RSA 311:7-g. See* RSA 311:7-h, I, II, V. The provisions of RSA 311:7-h, then, are not, by their own terms, independent or free-standing; rather, they are entirely dependent upon the validity of RSA 311:7-g. Having determined that RSA 311:7-g is unconstitutional, it follows logically that RSA 311:7-h is without legal effect. Accordingly, we need not resolve the constitutional challenges raised by the Association.

Although we do not address the constitutionality of this provision, we are mindful of the legislature's concerns in enacting it. We note, however,

that in 1986, we explicitly limited the activities of the Association. In an effort to protect against constitutional violations, we stated that "the Association should limit its activities before the General Court to those matters which are related directly to the efficient administration of the judicial system; the composition and operation of the courts; and the education, ethics, competence, integrity and regulation, as a body, of the legal profession." *Petition of Chapman*, 128 N.H. at 32. As we have already imposed restrictions upon the Association, a mechanism is in place to guard against constitutional violations. *See id.*

## III. Conclusion

Today, we neither redefine nor expand our inherent judicial power. Rather, we simply conform to our precedent. We reaffirm a well-established principle—that the inherent authority to regulate the practice of law lies with the judicial branch of government and includes the power to create a unified Bar. *Petition of Tocci*, 137 N.H. at 135.

*So ordered.*

BRODERICK, C.J., and DALIANIS and GALWAY, JJ., concurred (DALIANIS, J., concurred specially); DUGGAN, J., dissented.

DALIANIS, J., concurring specially. Although I wholeheartedly agree with the majority that the power to regulate the legal profession is part of this court's inherent power, I do not believe that deciding whether to unify the Bar is part of that inherent power. The court, however, has ruled upon this issue before. In *In re Unification of the New Hampshire Bar*, 109 N.H. 260, 264 (1968), the court held that determining whether unification is appropriate "is an integral part of the inherent power of this court to regulate the practice of law and to supervise those engaged therein in New Hampshire." The court specifically declined to overrule this holding in *Petition of Tocci*, 137 N.H. 131, 135 (1993). While I may disagree with these prior rulings, I choose to follow them because of *stare decisis*. *See Jacobs v. Director, N.H. Div. of Motor Vehicles*, 149 N.H. 502, 504-05 (2003). Accordingly, I concur in the result.

DUGGAN, J., dissenting. Because I believe that we should decide constitutional issues only when necessary and that the issue of the constitutionality of RSA 311:7-g is not ripe for judicial review, I respectfully dissent. In my view, the better course is to refrain from determining the constitutionality of RSA 311:7-g until we know the results of the unification vote.

Because the judiciary is but one of the three equal branches of government, "[r]igorous adherence to the narrow scope of the judicial

function is especially demanded in controversies that arouse appeals to the Constitution." *Youngstown Co. v. Sawyer*, 343 U.S. 579, 594 (1952) (Frankfurter, J., concurring). Thus, "clashes between different branches of the government should be avoided if a legal ground of less explosive potentialities is properly available. Constitutional adjudications are apt by exposing differences to exacerbate them." *Id.* at 595 (Frankfurter, J., concurring). Indeed, the long-standing and well-settled policy of this court is to decide cases on constitutional grounds only when necessary. *Appeal of Wintle*, 146 N.H. 664, 666 (2001). Because the members of the Association may vote to remain unified, we need not determine the constitutionality of RSA 311:7-g at this time.

Additionally, the issue of the constitutionality of RSA 311:7-g is not yet ripe for judicial review. In order to determine whether an issue is ripe, we must "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Texas v. United States*, 523 U.S. 296, 300-01 (1998) (quotation and brackets omitted). With respect to the first part of the analysis, fitness for judicial review, a court must consider whether the issue involved "is a purely legal one," *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149 (1967), or whether the issue will "be clarified by further factual development," *Thomas v. Union Carbide Agric. Products Co.*, 473 U.S. 568, 581 (1985). With respect to the second part of the analysis, hardship to the parties, a court must consider whether the impact "is sufficiently direct and immediate as to render the issue appropriate for judicial review at this stage." *Abbott Laboratories*, 387 U.S. at 152.

An application of the foregoing analysis to the facts of the present case leads me to conclude that the issue is not ripe for review. As to the first part of the analysis, the issue before us is a purely legal question and, therefore, fit for judicial review. Further factual development of the record is unnecessary.

The second part of the analysis, however, leads me to conclude that the issue is not ripe for review. The Association will suffer no hardship unless and until the ballots have been counted and it is determined that a majority of the members of the Association have voted to de-unify. Because, at this point, the Association has suffered no direct and immediate hardship merely by conducting the election, the court should not confront the legislative directive that the Association be de-unified.

Furthermore, I disagree that our prior cases have decided the precise issue presented by this petition. While we have held that this court has the inherent power to determine whether the administration of justice is best served by a unified Bar, *see In re Unification of the New Hampshire Bar*, 109 N.H. 260, 264 (1968), we have not decided whether a statute like RSA

311:7-g, which requires the Association to hold a binding referendum vote on unification, is a violation of Part I, Article 37 of the New Hampshire Constitution. The power of this court to order unification is clear and, as the majority points out, consistent with all state appellate courts that have addressed the issue. *See Petition of Tennessee Bar Ass'n*, 532 S.W.2d 224, 229 (Tenn. 1975). This court has not, however, previously considered what role, if any, the legislature has in unification of the Bar.

For these reasons, I respectfully dissent.